IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| FORREST WHIGHAM<br>6371 Stonecrest Drive<br>Brook Park, Ohio 44142 | ) ) ) | CASE NO. |
| | ) | JUDGE: |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES** |
| SOUTHWEST GENERAL HEALTH CENTER<br>c/o Susan O. Scheutzow<br>18697 Bagley Road<br>Middleburg Heights, Ohio 44130 | ) ) ) ) ) ) ) | **(Jury Demand Endorsed Hereon)** |
| Defendant. | ) | |

Plaintiff, Forrest Whigham, by and through undersigned counsel, as his Complaint against Defendant, Southwest General Health Center, states and avers the following:

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367 for Whigham's claims arising under 29 U.S.C. § 794 (Section 504 of the Rehabilitation Act of 1973 ("Section 504")); 42 U.S.C § 12101(a)(7) (Americans with Disabilities Act ("ADA")); 42 U.S.C. § 18116 (Section 1557 of the Patient Protection and Affordable Care Act ("ACA")).

2. Venue is properly in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) because (a) the Defendant is located in this judicial district, and (b) a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred within this judicial district.

## PARTIES

3. Plaintiff Forrest Whigham ("Whigham") resides in Cleveland, Ohio. Whigham is profoundly Deaf and uses ASL as his primary method of communication. Whigham is an "individual with a disability" within the meaning of all applicable statutes and regulations. Whigham has previously sought medical services at Southwest General Health Center and would use the healthcare services of Southwest General Health Center again if such services were made accessible to him.

4. Defendant Southwest General Health Center ("Southwest") is a non-profit corporation duly organized and existing pursuant to the laws of the state of Ohio. Southwest operates a health care facility located in Cuyahoga County, Ohio, and holds itself out to the public, including Plaintiff, as a provider of medical care services.

5. Defendant is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, and Defendant is therefore subject to the requirements of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

## FACTUAL ALLEGATIONS

6. Whigham incorporates by reference the allegations from the preceding paragraphs, as if fully re-alleged herein.

7. Whigham relies on ASL to effectively communicate with others, including when seeking medical care.

8. ASL is a complete, complex language that employs signs made with the hands and other movements, including facial expressions and postures of the body. It is a language distinct

2

from English – it is not simply English in hand signals – and has its own vocabulary and rules for grammar and discourse structure.

9. Because of the difficulty many Deaf individuals experience reading and writing the English language, passing notes back and forth is not an effective means of communication under the ADA, Section 504, and the ACA.

10. Because Whigham is profoundly Deaf, passing of written notes or being provided written instructions are not effective means of communication.

11. When Whigham has sought medical treatment from Southwest and other providers throughout his lifetime, he has relied on on-site ASL interpreters in order to communicate with health professionals and make informed medical decisions.

12. On or about January 1, 2019, Whigham was admitted to Southwest via the Emergency Department.

13. Whigham was admitted to the hospital after falling while getting down the stairs of his home.

14. Whigham was diagnosed with a trimalleolar fracture.

15. Southwest personnel were on notice that Whigham had a language barrier secondary to his congenital deafness.

16. Southwest immediately recognized, upon Whigham's arrival, that Whigham had a complicated cardiac history, including a previous triple bypass.

17. Southwest ordered a cardiac consultation because they immediately realized that Whigham would require surgical intervention for his extensive fracture resulting from his fall.

18. Upon arrival to Southwest, Whigham was not afforded a live on-site interpreter or Video Relay Interpretation ("VRI") system to address his cardiac history, medical history, or his pain levels.

19. During the cardiac consultation, it was noted that "[Mr. Whigham] is hard to communicate with, but it sounds like (what he wrote for me) is that he underwent a CABG twice. . ."

20. A live on-site interpreter was utilized at some point after the initial cardiac consultation, but for no longer than 90 minutes, after which the on-site interpreter left the premises for unknown reasons.

21. Whigham was not provided a live on-site interpreter nor VRI throughout the evening of January 31, 2019 and through the morning of February 1, 2019 when a closed reduction of his ankle fracture was performed under monitored anesthesia care.

22. Southwest proceeded with anesthesia and surgery despite knowing that Whigham would be unable to communicate with his medical team.

23. Medical records indicate that Whigham had difficulties explaining his medical history due to the language barrier and not having a live on-site interpreter to bridge the language barrier gap.

24. In general, the use of ASL as a mode of communication requires that Whigham uses hand movements as the sole way to effectively communicate with others.

25. Whigham was unable to effectively communicate with Southwest doctors and nurses throughout his stay as they examined and treated his serious injuries.

26. Because Southwest did nothing to foster effective communication, Whigham was unable to provide doctors and nurses with the full range of information needed to diagnose and treat him.

27. The ADA, Section 504, and the ACA require health care facilities to ensure effective communication with individuals who are Deaf and lay out specific working auxiliary aides that can be utilized.

28. None of the required working auxiliary aides, such as an on-site interpreter, or VRI, were provided to Whigham.

29. Having to endure any examinations or treatment without effective communication is unacceptable and unlawful under the ADA, Section 504, and the ACA.

30. The discrimination against Whigham was intentional, with reckless disregard, and with

deliberate indifference to his protected rights.

31. Whigham wants to have effective communication through a qualified on-site ASL interpreter at Southwest during his future visits in order to ensure that he receives adequate care.

32. In order to receive Medicaid funding, Southwest is required to develop policies and procedure that ensure that persons who are Deaf will receive adequate and effective communication.

33. Each time Southwest recertifies for Medicaid funding, it promises that it will provide and adhere to such policies.

34. Upon information and belief, Southwest has not provided proper training on the treatment of patients who are hearing impaired.

35. While Southwest has access to qualified on-site ASL interpreters, upon information and belief, Southwest staff have not had proper training on when they must utilize a qualified on-site ASL interpreter, nor is the process streamlined to ensure interpreting services are easily obtained in a timely manner.

36. Southwest does not inform hearing impaired persons of the services that are available for the Deaf and Hearing Impaired and did not inform Whigham of the availability of these services.

37. Due to Whigham's experience at Southwest, he was robbed of the opportunity to fully understand medical advice and be able to make informed medical decisions.

## COUNT I
## SECTION 504 OF THE REHABILITATION ACT OF 1973, 29 U.S.C. § 701 et seq.

38. Whigham incorporates by reference the allegations from the preceding paragraphs, as if fully re-alleged herein.

39. Whigham is profoundly Deaf and his disability substantially limit one or more of his major life activities, including his ability to effectively communicate with others who are not fluent in ASL.

40. Whigham is therefore considered to be an individual with a disability under Section 504 of the

Rehabilitation Act, as amended.

41. Southwest is a recipient of federal financial assistance by virtue of receipt of Medicare and Medicaid payments, as well as other financial assistance.

42. Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, requires that no qualified individual with a disability, on the basis of that disability, be excluded from participation in or be denied the benefit of the services, programs, activities, or to be otherwise discriminated against.

43. The doctors, nurses, and all other employees and staff of Southwest who interacted with Whigham had actual knowledge of his disability, yet, Whigham was consistently denied any form of effective communication.

44. Accordingly, Southwest discriminated against Whigham in the equal use of its facilities, and as a result, Whigham experienced mental anguish and humiliation in violation of his civil rights.

45. Southwest failed to provide services to Whigham as it would have provided a similarly situated hearing patient.

46. Southwest's policies, practices, and procedures, particularly the actions and omissions described above, violated Whigham's rights under Section 504 of the Rehabilitation Act by discriminating on the basis of a disability.

47. Southwest has discriminated against Whigham by failing to provide auxiliary aids and services necessary to ensure effective communication with individuals who are Deaf or hard of hearing in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

48. At all times material, the employees, staff, and agents of Southwest would have been able to communicate effectively with Whigham if Southwest had provided qualified interpreter services.

49. Southwest staff knew that Whigham would be harmed by their failure to provide an interpreter.

50. As a result of Southwest's actions, Whigham has been damaged and experienced emotional

suffering, pain, and anguish.

51. Southwest's actions were intentional, with reckless disregard, and with deliberate indifference to the rights and needs of Whigham.

## COUNT II
## TITLE III OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12181 et seq.

52. Whigham incorporates by reference the allegations from the preceding paragraphs, as if fully re-alleged herein.

53. Whigham's profound Deafness substantially limits his major life activities, including his ability to effectively communicate.

54. Whigham is an individual with a disability under Title III of the Americans with Disabilities Act.

55. Whigham meets the essential eligibility requirements for Southwest services at all times material hereto.

56. Whigham will likely return to Southwest premises in the near future and will be harmed by Southwest discriminatory policies and procedures.

57. Southwest violated Title III of the Americans with Disabilities Act in numerous ways, including discriminatory actions which occurred when Southwest:

    a. Failed to maintain policies and procedures to ensure compliance with Title III of the Americans with Disabilities Act, specifically policies that provide equal access and effective communication to individuals with disabilities, 28 C.F.R. § 36.303(a) (2010);

    b. Failed to ensure that communications with Whigham was as effective as communications with non-disabled patients, 28 C.F.R. § 36.303(a) (2010);

    c. Failed to provide auxiliary aids and services, including a qualified interpreter, and to modify policies and procedures to prevent discrimination against Plaintiff, 28 C.F.R. § 36.303(a) (2010), 28 C.F.R. § 36.302(a) (2010);

    d. Excluded Whigham from services of the public entity and denied Whigham the benefit of these services due to his disabilities, 28 C.F.R. § 36.202(a) (2010).

58. Southwest had knowledge of its obligations under the Americans with Disabilities Act and was deliberately indifferent to the rights of Whigham.

59. Southwest knew that Whigham would be harmed by their failure to provide an interpreter.

**COUNT III**
**SECTION 1557 OF THE PATIENT PROTECTION AND AFFORDABLE CARE ACT, 42 U.S.C. § 18116**

60. Whigham incorporates by reference the allegations from the preceding paragraphs, as if fully re-alleged herein.

61. At all times relevant to this action, Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), was in full force and effect and applied to Southwest conduct.

62. At all times relevant to this action, Section 1557, 42 U.S.C. § 18116, incorporated the definition of disability in the Rehabilitation Act, 29 U.S.C. § 705(9).

63. At all times relevant to this action, Whigham had substantial limitations to the major life activity of hearing and speaking, and was an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9) and Section 1557, 42 U.S.C. § 18116.

64. At all times relevant to this action, Whigham's primary language for communication was ASL and not English; and Whigham had limited ability to read, write, speak, or understand English, and was an individual with limited English proficiency within the meaning of Section 1557, 45 C.F.R. § 92.4.

65. At all times relevant to this action, Southwest received federal financial assistance, including Medicaid reimbursements, and was principally engaged in the business of providing health care. Therefore, Southwest is a health program or activity receiving federal financial assistance pursuant to 42 U.S.C. § 18116(a).

66. Pursuant to Section 1557, "an individual shall not, on the grounds prohibited...under section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794), be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance . . ." 42 USC § 18116.

67. Southwest has discriminated and continues to discriminate against Whigham solely on the basis of Whigham's disabilities and his limited English proficiency denying him meaningful access to the services, programs, and benefits Southwest offers to other individuals by refusing to provide auxiliary aids and services necessary to ensure effective communication in violation of Section 1157, 42 U.S.C. § 18116.

68. Southwest discriminated against Whigham by failing to ensure effective communication through the providing of qualified sign language interpreters.

69. As set out above, absent injunctive relief there is a clear risk that Southwest's actions will recur again with Whigham and other Deaf patients and family members.

70. Whigham is therefore entitled to seek and recover compensatory damages for the injuries and loss he sustained as a result of Southwest intentionally discriminatory conduct as alleged, pursuant to 42 U.S.C. § 18116(a).

71. Whigham is further entitled to an award of attorney's fees, costs, and disbursements pursuant to 42 U.S.C. § 18116(a) and/or common law.

**WHEREFORE,** Whigham respectfully prays that this Court grant the following relief against Southwest, including entering a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Southwest practices, policies, and procedures have subjected Whigham to discrimination in violation of Section 504 of the Rehabilitation Act and Title III of the Americans with Disabilities Act, and permanently enjoin Southwest from any practice, policy, and/or procedure which will deny Whigham equal access to and benefit from Southwest's services,

or which deny Whigham effective communication with Southwest. This includes entering a permanent injunction ordering Southwest:

    a. To immediately begin providing Whigham with interpreters to ensure he receives adequate healthcare for any other medical issues;

    b. To cease discrimination against Whigham and all other Deaf or hard of hearing patients;

    c. To promulgate and comply with policies and procedures to ensure that Southwest and their staff do not discriminate against individuals who are Deaf or hard of hearing;

    d. To promulgate and comply with procedures to ensure that Southwest will provide and pay for interpreter services when needed by individuals who are Deaf or hard of hearing in all services offered by Southwest;

    e. To promulgate and comply with procedures to ensure that Southwest will notify individuals who are Deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that state that Southwest will provide ASL interpreters and/or other communication services that ensure effective communication with Deaf or hard of hearing persons;

    f. Award compensatory damages to Whigham;

    g. Award reasonable costs and attorneys' fees; and

h. Award any and all other relief that may be necessary and appropriate.

        Respectfully Submitted,

        /s/ *Sean H. Sobel*
        Sean H. Sobel (0086905)
        Sobel, Wade & Mapley, LLC
        2460 Fairmount Boulevard, Ste 314
        Cleveland, Ohio 44106
        T: (216) 223-7213
        F: (216) 223-7213
        sobel@swmlawfirm.com

        *Counsel for Plaintiff Forrest Whigham*

## **JURY DEMAND**

Plaintiff Forrest Whigham demands a trial by jury by the maximum number of jurors permitted.

/s/ *Sean H. Sobel*
Sean H. Sobel (0086905)

*Counsel for Plaintiff Forrest Whigham*